The opinion of the Court was delivered by
Johnston, Ch.
At the last sittings of this Court, as I understand, the two Chancellors who were for confirming the decree, concurred in an order for a .re-argument of the cause, in order to ascertain whether a majority of the whole Court might not be of the same opinion. This was, as they conceived, due to the importance of the cause, and to the fáct that there was in the present decree a slight departure from the judgment rendered here many years ago in the case of Seabrook vs. Seabrook, McM. Eq. 201.
The difference between this decree and that was trpon a single point. That case ruled that the widow of the testator was excluded from the reversion which fell in upon the death of Joseph E. Seabrook. This decree maintains, on the contrary, that she is not excluded from a share in the reversion which accrued to the testator’s estate on the death of another of his sons, Robert Chisolm Seabrook.
As I concurred in the decree in the former case, and now concur in this decree, it is very proper that I should assign the reasons which have led to a change of my opinion.
I certainly would be unworthy of the position I hold, if when I am satisfied I was wrong, and a fit occasion offers itself to retract my error, without injury to the rights of parties, I should for mere consistency’s sake, or from mere pride of opinion, pertinaciously adhere to the error.
Inasmuch as the decree in the former case is neither pleaded as a conclusive interpretation of the will, nor is there any. such ground taken in the appeal; nor has it been insisted on *508 in argument by counsel, whose duty it was to refer the Court to authorities, I have not conceived it my duty to consider that decree as a bar.
It was held in the former decree, and is held in this, that the words of the testator by which he disposes of the reversion to his heirs, do not amount to a testamentary disposition, or convert the character of the subject from intestate, into testate property. He who directs his property to be distributed as the law would have distributed it, might as well hold his tongue, for he, in effect, merely wills to die intestate.
The Chancellor who delivered the decree in the former case, held, as has often been held since, that the widow came under the description of an heir ; and had it been necessary to resort to the will, instead of the statute of distributions for her right, would have sustained it. His only difficulty was that the testator had, as he conceived, barred her of the reversion.
The former decision is that she is barred; this decree is that she is not; and the governing question in the case is, is she barred or not barred ?
My opinion is, that she is not barred. There is this to be said; that when the former case was heard, we had fewer decisions upon the point in our own Courts than we now have: and were left more to the English and foreign cases than we now are. We had enough then, however, had it not been overlooked, to have led to a different result.
The case of Sympson vs. Hutton, more correctly stated by the Master of the Rolls, in Pickering vs. Stamford, 3 Ves. 335, than elsewhere, was to this effect: Thomas Addison, reciting in his will that his daughter, Jane, had married without his consent, gave her certain provisions out of his estate, real and personal, declaring them in full satisfaction of her child’s part of whatever more she might have expected from him, or out of his personal estate. He then devised to his wife; and gave her furniture and other things, declaring them in full of her dower, thirds, and any other claim at law, or in *509 equity, or by any local custom, to any other part of his estate, real or personal. The residue he then gave to his other daughter; who died in his life time, leaving one child. By a codicil he subsequently gave a power over this residue to his wife: which she ineffectually executed; and the testator was declared to have died intestate as to it. Lord Thurlow held that the bars were ineffectual both as to the widow and the daughter Jane, and that the residue should be distributed as intestate, under the statute of distributions, one third to the widow, one third to Jane, and the remaining third to the child of the daughter, whose death had occasioned the lapse.
Then we had the case of Pickering vs. Stamford(a) itself. The testator gave certain parts of his real and personal estates to his wife, declaring this provision a bar, full satisfaction and recompense of all dower or thirds which she could have or claim out of his real and personal estates, or either, or any part of them. After other provisions, he gave the residue to his executors, for their own use, in the first instance, but afterwards by codicil directed them to dispose of it in charities; and part was accordingly applied in the founding of a school. Part of the residue had been loaned out on mortgage and other real securities ; and it having been decided that the bequest of such portions to charitable uses was void under the statutes of. Mortmain, the next of kin brought their bill for an account, as if the property were intestate. The account was ordered. In a contest between the widow and the next of kin, it was decided that the widow was barred of any right in the subject. But upon a petition for a rehearing, the same judge, upon examination of the case of Sympson vs. Hutton, reversed his decision, and let her in.
We had then the case of Goodtitle vs. Pugh.(b) It is sometimes quoted in such a manner as to render it difficult to find it. It is in 3 Browns Parliamentary Cases, 454, Tomlin’s edition, but not in the other editions of Brown. It is also particularly *510 stated by Sir Wm. Grant, in Cholmondely vs. Clinton, (2 Merival, 348,) under the style of Doe ex dem. Baily vs. Pugh.
The testator, Calvert Benn, declares as to his personal .estate: “My son shall have no power to handle any of my money, or have any thing to do with any of my goods and chattels of any kindand otherwise disposes of his personalty. Then as to his real estate, he thus directs: “ As to my real estate, after the death of my wife, I give and devise to the eldest son of my son, begotten, or to be begotten, all my estate in London and Middlesex, for his life,’’ &c., to “the'second, all my estates in the County of Hertford, for his life,” &c., “ and so on, in the same manner, to áll the sons my son may have. If but one son, then all the real estates to him for life. And for want of heirs in him, to the right heirs of me, Calvert Benn, the testator, forever, my son excepted, it being my will he shall have no part of my estate, real or personal.” _
■Soon after the testator died, leaving, besides his son, his widow and three daughters, and no other issue.
Wm. Benn, the son, conveyed to Pugh, and died, never having had issue, and the action was by the daughters, the widow being dead, against his alienee.
These facts being found by special verdict, the Court oi Kings Bench gave judgment for the plaintiffs.
The case came before the House of Lords and was argued, and Lord Thurlow propounded a question for the opinion oi the Judges: “whether any person, and who, took any, and what estate, under the will mentioned in the special verdict, by way of devise and purchase.” And the unanimous opinion of the Judges being that no person so took by devise and purchase, it was adjudged that the judgment of the King’s Bench be reversed.
We had also our own case of Hall vs. Hall, (2 McC. Ch. 269.) Ainsley Hall, the testator, after making provision, among others, for his wife, out of his real and personal estate, desired by the twenty-seventh clause, “ that the provision made by *511 his will for his wife, should be taken in lieu and bar of all claim of dower, inheritance, or any other claim on her part.”
He afterwards purchased real estate; as to which he died intestate; leaving his widow, a brother, and children of a brother, surviving him.
In a contest which arose in this case between the widow, and these other distributees, it was contended by the latter, that she was excluded from her share in this intestate real estate. But the Court unhesitatingly held that she was not harred or excluded.
Now these cases constitute very strong authority for the present decree, and in opposition to the former decree.
I know that it was urged against the bar in Pickering vs. Stamford, and in Hall vs. Hall, that a bar which might be good in other circumstances, should not be allowed when the intestacy is undesigned, or occurs by uriforseen events, and the argument affected the mind of the Court. It was an appeal to the supposed intention of the testator, that in the particular events that have occurred, he would not have declared the bar. But there is less in such an argument than at first view seems to exist. There are but two systems under which the property of deceased persons can fall; the law of testacy, and the law of intestacy. As, on the one hand, a will, properly drawn, will take in and dispose of property not in the contemplation of the testator, or even unknown to him, and, not improbably, in many cases, contrary to what his particular intention would have been had he contemplated the property when he drew his will: — why, on the other hand, should property rendered intestate, by accident, be diverted from the code under which it falls, or be modified under its operation, by conjecturing, that under the circustances, the testator would have so dealt with it ? Besides, it is to be observed, that in all cases of partial testacy, the subjects omitted in the will, are not to be regarded always as strictly intestate, as respects the intention of the testator, in the same sense as they *512 might be where there is a total intestacy. We have an example of this doctrine as respects advancements in Snelgrove vs. Snelgrove, (4 Des. 214.) A man may provide for matters of primary importance in his view, hesitating about carrying his will further, or designedly leaving out other matters ; or he may provide for future contingencies as far as he thinks he can look into the future; and if his provisions miscarry, no other man can tell, what, in that contingency he would have done, unless he tells in his will; a supposition of his ability to do which, is by the way, absurd in itself; since if he had foreseen the contingency it would have been no contingency to him. As to things unforseen there can in the nature of things be no intention.
But-in this case of Hall vs. Hall the testator knew, or must be presumed to have known the law; and that his after-acquired land could not pass under his will; and there was nothing accidental in the case.
And as to Goodtitle vs. Pugh, there is no intimation in this case that surprise or accident had any influence on the decision. It was apparent on the will, that the father designed to cut off the son. The Court determining in its own mind that this could not be done while the estate was not given to others, enquires was such a gift made, and upon being certified no such gift had been made, determines in his favor. The principle of the decision was the estate must go under the will or under the law — one or the other — there was no half-way measure.
But in addition to these cases we have many others, decisions made here since the former decree of 1841; decisions which have fixed the principle in our jurisprudence so deeply that it would uproot the law of property to depart from them; from deference to this case and former judgment in it.
We have Gordon vs. Blackman, (1 Rich. Eq. 61,) in which the testator attempted to cut off all his kindred, but in vain, as the Court declared, unless he gave away the property for some lawful purpóse. '
*513 And we have Youngblood vs. Norton, (1 Strob. Eq. 122,) in which the principle is announced, that so far as a man neglects to make a will, the law of intestacy must prevail; and so strongly was this principle applied, that it was held he could not even regulate the value of advancements except by testament. The same doctrine had governed in Young vs. Lorick, and Sheppard vs. Sheppard, cited in that case.
We have, also, Crossby vs. Smith, (3 Rich. Eq. 244,) where the testator attempted the extraordinary measure of giving to his children, and then declaring that their children should not inherit, from them; but the Court put down the attempt, not as foolish, but as unlawful.
I could quote other cases, but surely it is unnecessary.
An analogous principle prevails in cases of lapse. See Cook vs. Silly, 3 Atk. 573.
But, against all this, we are referred to an opinion delivered in the case of Hoyle vs. Stowe, (1 Dev. Rep. 323, N. C.) The Ch. J. in that case says: “ It is equally true, that the mere exclusion of the heir by the woids of the will, however express or direct, will not be efficacious to destroy the succession. There must be a disposition to some other person, capable of taking, because in the very nature of inheritances, the heir takes whatever is not given away. Manifestly, however, this rule can apply only where there is a single heir.” “When there is a class of heirs the exclusion of one leaves others who may take,” &c.
But in these observations, it is forgotten that when there is a plurality of heirs, they do not take jointly but severally, each his own share, or proportion ; and, in principle, the share of one can no more be taken from him, though only a part, and not the whole of the estate, without giving that share to others, than the Whole can be taken from a single heir without the same condition.
But the principle of the cases in England, such as Pickering vs. Stamford, and Sympson vs. Hutton, and other cases, is also overlooked. These are cases of intestate personalty, it *514 is true, but the personalty was distributable among a plurality of persons, and in different proportions, just as our estates, whether real or personal, are distributable by statute; and yet we do not find that the attempted bar of one threw the share of that one to the others. The observation of the Ch. J. is also pointedly opposed by Hall vs. Hall.
Hitherto I have considered the disposition of this reversion in the light of intestacy. But, before quitting this aspect of the case let me -remark, by the way, that the argument at the bar that dower and .thirds of real estate are always convertible, and when dower is barred, thirds is also barred, is not precisely true. The qubject of intestacy here is a reversion, in which there is no dower, (2 Leigh 29, Blow vs. Maynard,) yet will it be contended that such an interest admits of no thirds? Buy I return to the observation I intended to make, before this digression. I will now consider the will as operating on this reversion. If it does the wife takes among the other heirs mentioned, as a designated person, and if she does, the declaration in the prior clause that what I háve herein given her shall be a bar, can only apply to the provision in the latter clause upon the supposition that by herein the testator meant the. provision made for the widow in the clause containing the bar, and not the provision made for her in the will — a very unnatural construction — which holds out the testator as intentionally in advance, barring the gift he intended, at the time, to make in a subsequent part of the instrument.
That portion of the decree which relates to the right of way, was decided at the last argument.
It is ordered that the residue of the decree be affirmed, and the appeal dismissed.
Warbiaw, Ch., concurred.
Dunkin, Ch., dissentiente.
*515 The decree of the Circuit Court commences with the statement that “ the plaintiff is the widow of William Seabrook, late of Edisto Island, and the defendants are devisees and heirs at law of the said William Seabrook, and persons claiming by or under them.” The Chancellor then proceeds to consider the two important clauses recited in the decree and the rights of the testator’s widow under those provisions. Some twenty years since the proper construction of William Sea-brook’s will in reference to these rights had been subjected to the adjudication of this Court in a suit between (substantially) the same parties as those now before it. To the decree made in that cause, which is reported McMul. Eq, 201, the Chancellor particularly adverts, and while recognizing'and approving some of the principles therein announced, he arrives at a different conclusion as to the construction of the testator’s will. He ruled that in the event, which had happened, the widow of the testator (the plaintiff in this cause) was entitled to one third of that portion of the testator’s estate which had been devised to her son. In the original cause it had been adjudged that on the happening of events which, we all agree, were essentially the same, the testator’s widow took no interest in the property embraced in this devise. That inquiry had been a leading question in the cause. From the decision of the Circuit Court, unfavorable to the claim of the widow, an appeal was taken by Mrs. Elizabeth E. Seabrook, and by her alone. The cause was elaborately argued, and the Circuit decree upon this subject was sustained by the unanimous judgment of the Court of Appeals concurring in the opinion of Chancellor Harper, who was the organ of the Court. This decision was pronounced in May, 1841, and from that timb was regarded as (if not the law of the land) the law of William Seabrook’s will. Few persons may have had the curiosity to look into the reasons of the decree, and of those few, some may have shaken their heads at the logic of the Chancellor, while all yield acquiescence to the judgment of the Court, The parties — the community — have no concern but with the *516 matter adjudicated. That ascertained, it is regarded as the rule of property. All the reasons of res judicata, the acknowledged policy of stare decisis, forbid interference in such cases. It is the interest of society that there should be an end of litigation. The land may be blest with wise judges, or it may be otherwise. But no servitude is so intolerable as under a system ubi lex aut vaga aut incerta est. Thirty-five years ago a revolution in the judiciary organization took place in consequence of discordant decisions. Upon the same clause of William Willson’s will, one purchaser from his devisee was held to have a good title, while another was dispossessed of his plantation. Nothing can be more powerful and convincing than the language of Judge Nott upon this subject, in Carr vs. Porter, 1 McC. Ch. 71. The wholesome doctrine thus approved by such luminaries as Mansfield, Kenyon and Nott, and recognized by Mr. Fearne, illustrates the importance, for the sake of the stability of property, of adhering to an abstract rule of construction. But the decree of 1835-’41, is an authoritative judgment, giving construction to the will itself. When, in Carr vs. Green, the defendant was ejected from his land, while his neighbor, Porter, claiming under precisely the same clause, was held to have a perfect title, it may ’ have abated the discontent of Green that his rights had been adjudicated in a different tribunal. Here the parties are virtually the same; the tribunal is the same, and the same question arises under the same clauses of the testator’s will.
This appeal has been twice argued. At the former hearing I was of opinion that the Court should adhere to a construction already given by a competent tribunal. A re-argument was ordered, not because a majority of the Court were unprepared to decide the cause, but from an unwillingness to overrule the decision of 1841 without the advantage of a full Court. My opinion remains unshaken that the Court should adhere to the determination of 1841. If that judgment, declaring Mrs. Seabrook not entitled, be now repudiated in con *517 sequence of the infiunity in the argument, that the words of exclusion applied to property, as to which the testator died intestate, it is a mistake to suppose that this quiets controversy, or that enterprize will expire with this generation. When a question shall arise as to the share of another child, it may, with great plausibility, be contended that the true view yet remains to be taken — that the judgment of 1841 should be maintained, and that the vice in the argument now made is in not probing to the root the infirmity in the reasoning of the former decree — that the devise over was not to the heirs of the testator, but to those who should be his heirs at the happening of the contingency. By this construction a valid contingent limitation \^as created to those heirs from which the widow would be confessedly excluded by the first clause of the will, and not a case of intestacy, in which she might be entitled to participate. After the decision now pro- ' nounced, who shall say that this inqniry would not he open? And who will have the intrepidity to predict at what time, and under what circumstances, the construction of these clauses of William Seabrook’s will shall be definitively established ?

Appeal dismissed,

 2 Ves. Jun. 272, 581; 3 Ves. 332, 401.

 2 Bro. Parl. Cas. 454, (Tomlin’s edition); 2 Meriv. 348.